THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PLAINTIFF IN ERROR, v. JACOB S. SMALLEY, DEFENDANT IN ERROR.

1.  The duty to look and to listen before crossing a railroad includes the duty to do that which will make looking and listening reasonably effective.   If there is a permanent obstruction to sight that would make danger invisible, and a transient noise that would make it inaudible, it is negligence to go forward at once from a place of safety to a place of possible danger.   Prudence requires delay until the transient noise has abated and hearing again becomes efficient for protection.

2.  The plaintiff drove by daylight, along a highway, in a northerly direction, toward a railroad crossing that was guarded neither by gates nor by a flagman.   He drove slowly, looked and listened.   His view of trains that might come from the west was cut off by a building and by a bank of earth on which were a fence and bushes.   A coal train, in plain sight, was moving west along the north track, toward the crossing, which it passed over just before the plaintiff reached it, the caboose clearing the highway as he drove, without stopping, upon the south track.   At the same instant his horse was killed, his sleigh demolished and he himself injured by the engine of an eastbound passenger train, which, until it was upon him, by reason of the obstructions above mentioned, he could not see and which he did not hear. *Held,* that it was error in the trial judge to deny a motion to nonsuit for contributory negligence.

On error to the Supreme Court.

For the plaintiff in error, *Alvah A. Clark.*

For the defendant in error, *Alan H. Strong.*

The opinion of the court was delivered by

ADAMS, J.   This writ of error brings up a judgment rendered in the Supreme Court upon a verdict for the plaintiff in the Somerset Circuit.   It is necessary to notice only the assignment of error that is directed against the refusal to nonsuit the plaintiff for contributory negligence.

The evidence on behalf of the plaintiff presented this case : On the 11th day of January, 1893, at a few minutes past noon, the plaintiff was driving a one-horse sleigh, with bells, in a northerly direction, along Vosseller avenue, in Bound Brook, toward a crossing of the Central railroad, which was guarded neither by gates nor by a flagman.   On the west side of the avenue there was a building and a bank of earth with a fence and bushes upon it, which cut off the plaintiff's view of trains in that direction.   A coal train, in plain sight, was moving west along the north track toward the crossing. As the plaintiff reached the crossing and drove upon the south track, which he did without stopping, the caboose of the coal train was just clearing the highway and was distant from him only a few feet.   As the horse came upon the south track the engine of an eastbound passenger train struck and killed him, crushed the sleigh and seriously injured the plaintiff.   Several witnesses testified, negatively, on behalf of the plaintiff that they did not hear any signal by bell or whistle from the engine of the eastbound train.   The plaintiff himself testified that by reason of permanent obstructions he could not see the eastbound train until his horse was on the track.   The evidence of Harvey Smalley and John C. Morris was to the same effect.   The plaintiff further testified that he did not hear the eastbound train, and that he heard no bell rung or whistle blown.

There was no express evidence to show how much noise the coal train made or, indeed, that it made any noise, nor under the circumstances was such evidence necessary.   The thing spoke for itself.   The court will not ignore common experience.   There is no reason to think that the physical conditions were exceptional, or that the phenomenon of an

inaudible coal train was a feature of the situation. The con-
clusion is inevitable that this moving body was accompanied
by the usual roar and rumble, which must have greatly hin-
dered a person in its immediate vicinity from distinguishing
other sounds.

The duty of a person who is about to cross a railroad
track is to be prudent—to look and to listen, and to do the
things that will make looking and listening reasonably effec-
tive. If the vision or hearing of such a person is limited by
permanent obstructions or disturbances, he should for that
reason be cautious; if his vision or hearing is limited by
transient obstructions or disturbances, under circumstances
which oblige him to rely on the sense thus limited, he should
wait until it has again become efficient to warn him of peril.
One sense, if well used, may give warning enough. To go
on a railroad crossing in the way of a train which can be
neither seen nor heard, but which would be either visible or
audible except for some temporary hindrance to sight or hear-
ing, is to be negligent. These are rules of good sense, and
therefore of law. In *Merkle* v. *New York, Lake Erie and
Western Railroad Co.*, 20 *Vroom* 473, the plaintiff's intestate
went into danger while permanent obstructions, as in this case,
hindered his seeing, and the noise of his own load hindered
his hearing. It was held that he contributed by negligence
to the disaster that ensued, not in relying on one sense alone,
for that was a necessity of the situation, but in advancing
while circumstances within his own control made the only
sense on which he could rely ineffective to protect him.

In *West Jersey Railroad Co.* v. *Ewan*, 26 *Vroom* 574, the
plaintiff was held to have been negligent in going upon a
railroad track while the noise and smoke of a train that had
just passed deprived him temporarily of the power to see
clearly and hear distinctly. The governing rule was thus de-
clared by this court, in *Newark Passenger Railway Co.* v.
*Block*, 26 *Vroom* 605, 612, in language immediately referring
to impediments to sight, but equally applicable to impediments
to hearing: "It may be generally said that if obstacles tem-

porarily intervene to prevent observation, reasonable prudence would dictate delay until such observation as is requisite has been made." The case under consideration appears to fall within the rule which these decisions define and illustrate. The plaintiff went forward into a danger which permanent obstructions made it impossible to see, and which a passing noise made it difficult to hear. The permanence of the obstructions to sight made hearing his best reliance. A few moments' delay would have given him the full benefit of it. In advancing at once, while circumstances interfered with its efficient exercise, he acted with less prudence than the law exacts.

At the trial, which took place nearly four years after the accident, the plaintiff, by way of excuse for not understanding a question, testified that he was a little hard of hearing. He was then thirty-four years old. Injury to hearing was not enumerated, either by the plaintiff or by Doctor Davis, his physician, among the consequences of the injury. It is therefore natural to suppose that the plaintiff's hearing was not acute at the time of the accident. Deafness increases the obligation to be cautious. *Buttelli* v. *Electric Railway Co.*, 30 *Vroom* 302. As it is not quite clear that the plaintiff's disability existed on the day of the accident, no weight has been given to this consideration.

The plaintiff is entitled to the benefit of an examination of the whole record, in order that the court may see whether the defect in his case was cured by subsequent proof. *May* v. *North Hudson County Railway Co.*, 20 *Vroom* 445. Nothing appears to alter the conclusion that the motion to nonsuit the plaintiff for contributory negligence should have been granted. The judgment against the plaintiff in error is therefore set aside.

*For affirmance*—DEPUE, LUDLOW. 2.

*For reversal*—COLLINS, DIXON, GARRISON, GUMMERE, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON. 9.